**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | |
|---|---|
| **CASEY LEON COLBERT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **NO. 1:18-cv-00030** |
| ) | **CHIEF JUDGE CRENSHAW** |
| **CHERRY LINDAMOOD,**[1] **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

Casey Leon Colbert, an inmate currently confined at the Northeast Correctional Complex in Mountain City, Tennessee, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983, naming as defendants Cherry Lindamood, CoreCivic/South Central Correctional Facility, Michael R. Neilson, Gregory Keeton, Wanda Spears, Hank Inman, Tyler Barnett, Lieutenant Winston [F/N/U], Tony Parker, Robert Turman, and the Tennessee Department of Corrections ("TDOC"). Plaintiff also refers to Case Manager Bennett [F/N/U] and Correctional Officer Durham [F/N/U] as defendants in the body of the complaint. Plaintiff also filed an application to proceed *in forma pauperis* (Doc. No. 2) and a Motion for a Temporary Restraining Order (Doc. No. 3).

**I.     Application to Proceed as a Pauper**

The Court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because it appears from Plaintiff's *in forma pauperis* application that he lacks sufficient financial resources from which to pay the full filing fee in advance, Plaintiff's

---

[1] In his list of defendants, Plaintiff states that "Cherry Lindamoon is the warden at South Central Correctional Facility" (Doc. No. 1 at 4), but the Court takes judicial notice that the proper spelling is "Cherry Lindamood." See *South Central Correctional Facility*, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/south-central-correctional-facility (last visited May 15, 2018).

application (Doc. No. 2) will be granted. Plaintiff nonetheless remains responsible for paying the $350.00 filing fee, so the fee will be assessed as directed in the accompanying Order. 28 U.S.C. § 1915(b)(1).

## II.    Motion for a Temporary Restraining Order

At the time Plaintiff filed this action, he was confined at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. (Doc. No. 1 at 2.) His Motion for a Temporary Restraining Order requests immediate transfer from SCCF to another facility. (Doc. No. 3 at 1, 3.) Since filing this motion, Plaintiff has been transferred to the Northeast Correctional Complex in Mountain City, Tennessee. (Doc. Nos. 5–6.) Thus, Plaintiff has received the requested relief. Moreover, "[a] prisoner's request for injunctive relief is moot upon his transfer to a different facility." Newell v. Ford, No. 16-6449, 2016 WL 9737926, at *1 (6th Cir. Oct. 31, 2016) (citing Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996)). Accordingly, Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 3) will be denied as moot.

## III.    Initial Review

The Court is required to conduct an initial review and dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915A, 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The Court must construe a *pro se* complaint liberally, United States v. Smotherman, 838 F.3d 736 (6th Cir. 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. See Thomas v. Eby, 481 F.3d 434, 437 (6th Cir. 2007) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)).

## A.  Factual Allegations

Plaintiff alleges that in November 2017, while assigned to C-A pod cell 202, he requested reassignment to a different pod from Sergeant Westerman and Case Manager Bennett. (Doc. No. 1 at 5.) Plaintiff told them that the Crips gang was extorting money from him, that he expected to be assaulted if he missed a payment, and that he did not have the money to pay. (Id.) Defendant Bennett told Plaintiff that his request would likely be denied because segregation was overcrowded, and because Plaintiff ran afoul of the SCCF administration's policy to deny a cell change request if an inmate received a write-up in the six months preceding the request. (Id. at 6.) Bennett sent Plaintiff back to the same cell. (Id.) In December 2017, members of the Crips assaulted Plaintiff, and threatened to assault Plaintiff and his brother if he told anyone. (Id.) Plaintiff did not report the assault at the time. (Id.)

After the December 2017 assault, Plaintiff requested to see a dentist because his bottom right teeth were so loose that he had difficulty chewing. (Id.) Plaintiff informed a nurse that he had been assaulted, and the nurse referred Plaintiff to the dentist. (Id.) A dentist named Dr. Brewster examined Plaintiff a "couple weeks later," informed Plaintiff that he may have a broken jaw, pulled one of Plaintiff's bottom teeth, and prescribed ibuprofen and penicillin. (Id.)

Within a week, Plaintiff experienced seizures. (Id.) Emergency medical services transported Plaintiff to the Waynesboro hospital, where Plaintiff underwent several tests. (Id.) A doctor determined that Plaintiff had a fractured jaw and a healed fracture on his top left jaw line. (Id. at 6–7.) Plaintiff told the doctor he sustained these injuries from gang assaults at SCCF. (Id. at 7.) The doctor transferred Plaintiff to Vanderbilt Medical Center, and a Vanderbilt doctor concurred with the referring doctor's diagnoses. (Id.) The doctor placed Plaintiff on a liquid diet, prescribed him ibuprofen, scheduled surgery on his jaw, and told him to avoid fighting. (Id.) Prison

staff transported Plaintiff back to SCCF, and Plaintiff spent several days in medical, during which Plaintiff received the prescribed treatment. (Id.) Plaintiff then returned to C-A pod cell 202. (Id.)

In January 2018, Hank Inman, the Security Threat Group Coordinator at SCCF, placed Plaintiff in segregation because Inman suspected that Plaintiff was in the Bloods gang. (Id.) Plaintiff was also taken to segregation for possession of a weapon and refusing a drug test. (Id. at 8.) Plaintiff later told Inman in a medical examination room that he had been found with a weapon because the Bloods gang was attempting to rob and assault him. (Id. at 7–8.) Plaintiff also told Inman that the Bloods were pressuring him to bring contraband into SCCF, but that Plaintiff could not do so. (Id.) Geneva Roberts, a member of SCCF Internal Affairs staff, was present for this conversation. (Id. at 8.) Plaintiff was then released from segregation and placed in A-B pod cell 226. (Id.) Later, after an incident caused SCCF to go on lockdown, Defendant Inman called Plaintiff to his office because Inman was interviewing all members of the Bloods gang. (Id.) Plaintiff told Inman that he was not affiliated with the Bloods, and Inman said he would ask the warden and internal affairs to transfer Plaintiff "ASAP." (Id.)

On March 7, 2018, Plaintiff requested reassignment from Sergeant Rich because he was having gang problems in A-B pod. (Id.) CO Jackson took Plaintiff and fellow inmate Richard Hopkins to E-B pod cell 103. (Id.) On March 8, Plaintiff smoked marijuana and drank alcohol that Hopkins gave him. (Id.) Plaintiff told CO Walls that Hopkins had drugged him. (Id.) Plaintiff requested medical attention, and told Sergeant Rich that Hopkins was conspiring with other inmates to rob and assault him. (Id. at 9.) SCCF mental health staff arrived, and Plaintiff denied being suicidal or hearing voices. (Id.) Plaintiff was taken to medical cell 65. (Id.)

On March 9, 2018, Lieutenant Winston and CO Neilson told Plaintiff to move to C-A pod cell 101. (Id. at 9, 23.) Plaintiff told them he had been assaulted in C-A pod, and asked to speak to

the person who ordered his relocation. (<u>Id.</u> at 9.) Plaintiff also told this to an individual he believed to be CO Mills, but turned out to be SCCF Captain Gregory Keeton. (<u>Id.</u>) Neilson told Plaintiff he did not have a choice, and Winston told Plaintiff he would be moved to another pod "after count clear[ed]." (<u>Id.</u> at 10.) Plaintiff went to C-A pod cell 101 that afternoon, and members of the Crips gang told Plaintiff they would assault him if stayed in C-A pod. (<u>Id.</u>) Plaintiff relayed this threat to Michelle Wells, an SCCF case manager. (<u>Id.</u>) Wells and an unnamed Sergeant questioned Plaintiff in another area, and told Plaintiff he would be moved to segregation "after count." (<u>Id.</u>) Plaintiff returned to the cell, count cleared, and SCCF staff did not come to retrieve Plaintiff. (<u>Id.</u>) Plaintiff then went to the chow hall to request reassignment from a member of prison staff, and Neilson and Winston told Plaintiff they did not believe he was in danger. (<u>Id.</u> at 11, 23.) Plaintiff threw a food tray on the floor in an unsuccessful attempt to be placed in segregation. (<u>Id.</u> at 11.)

Plaintiff then went to "pill call," and two white gang members from the E-B pod attacked him. (<u>Id.</u>) Plaintiff returned to the C-A pod, where gang members forced Plaintiff to fight CO Patrick Montague. (<u>Id.</u> at 11, 23.) Plaintiff told Montague to "hit the man-down code and call [for] backup." (<u>Id.</u> at 11.) Upon hearing Plaintiff tell Montague this, a member of the Crips attacked Plaintiff, and other gang members assaulted Plaintiff and carried him to the front of the pod. (<u>Id.</u>) Plaintiff was badly bleeding from a cut over his eye. (<u>Id.</u>) SCCF staff members took Plaintiff to medical, and Plaintiff told them that his life was in danger. (<u>Id.</u>) Heather Banks, a member of the SCCF medical staff, examined Plaintiff and stitched the cut over his eye. (<u>Id.</u>) Captain Whitehead questioned Plaintiff and ordered SCCF staff to photograph Plaintiff and escort him to segregation in H-C pod cell 213. (<u>Id.</u>) Plaintiff gave an "emergency grievance" related to this incident to SCCF staff member Mark E. Bowers to take to a captain. (<u>Id.</u>) The captain determined that the grievance

was not an emergency and forwarded it to Brenda Pevahouse. (Id.) According to Plaintiff, he was the only inmate segregated or charged because of this incident. (Id.)

On March 16, 2018, as Plaintiff was receiving a food tray, another inmate told him to check the tray "for hair on it." (Id. at 12.) Defendant Tyler Barnett said "shut up don't tell him that" to the other inmate. (Id.) Plaintiff ate the food, and was found on the floor regurgitating. (Id.) Barnett called for assistance and helped take Plaintiff to medical on a stretcher. (Id.) Plaintiff reported "sharp pains in his stomach and throat," and believed that "someone put something in his food to harm him." (Id.) Plaintiff requested that Barnett complete a witness statement form, and Barnett agreed to do so. (Id.) Plaintiff explained to Captain Ward and Chief Deathrage that the Crips gang had assaulted and extorted money from him, and that "someone put something in his food." (Id.) Plaintiff requested to speak to internal affairs and STG Coordinator Inman, but they had left for the weekend. (Id.) Emergency medical services then transported Plaintiff to the Waynesboro hospital. (Id. at 13.) Plaintiff returned to SCCF that evening and went back to H-C pod cell 213. (Id.) Plaintiff then bagged all the evidence, including his bloody clothes and vomit with "crushed glass in it." (Id.)

On March 17, 2018, Barnett informed Plaintiff that he would not complete a witness statement form. (Id.) Plaintiff filed an emergency grievance on this issue on March 18. (Id.) On March 19, Plaintiff requested that Barnett contact Geneva Roberts of internal affairs to retrieve the bagged evidence. (Id.) On March 21, Plaintiff showed this evidence to Chief McClain, and McClain said he would report the incident to Roberts immediately. (Id.) On March 22, McClain told Plaintiff that he instructed Roberts' assistant to retrieve the bagged evidence. (Id.) SCCF staff did not collect Plaintiff's evidence. (Id.)

On April 1, 2018, Plaintiff requested 535 copies of "legal documents" from SCCF Librarian Wanda Spears. (Id.) Defendant Spears told Plaintiff that SCCF charged fifty cents per copy, but copies were free if Plaintiff provided the paper. (Id.) Plaintiff could not afford the cost of $5.26 paper at the commissary, and told Spears he wanted free copies. (Id.) On April 3, Plaintiff filled out four personal withdrawal request forms to pay for copies. (Id. at 14, 29–30.) On April 5, Plaintiff filed a consumer affairs complaint with a Tennessee state agency. (Id. at 14.) On April 8, Plaintiff filed a grievance, stating that Defendants Spears, Cherry Lindamood, CoreCivic, and SCCF were conspiring to commit fraud, theft, embezzlement, and trespass against Plaintiff. (Id.)

Correctional Officer Durham, to whom Plaintiff refers as a defendant, was a maintenance supervisor at SCCF. (Id.) In March 2017, SCCF terminated Durham for "tampering with security devices." (Id.) Plaintiff alleges that Durham allowed inmates on the maintenance crew to alter cell doors so that they could be opened after they were supposed to be locked. (Id.) Durham "open[ed] several chase pipes" leading to the back of E-B pod cell 103 while Plaintiff resided there. (Id. at 15.) Durham also allowed his crew to work in H-C pod while Plaintiff resided there. (Id.)

### B.    Standard of Review

To determine whether a complaint "fails to state a claim on which relief may be granted" under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the Court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Hill v. Lappin, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" Williams v. Curtin, 631 F.3d 380, 383 (6th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009)). An assumption of truth does not, however, extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'"

Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson, 551 U.S. at 94 (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

## C. Discussion

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009) (quoting Sigley v. City of Parma Heights, 437 F.3d 527, 533 (6th Cir. 2006)).

### 1. Improper Parties Under § 1983

Plaintiff names the Tennessee Department of Correction as a defendant, but TDOC "is not a 'person' within the meaning of § 1983, and is therefore not a proper defendant." Hix v. Tenn. Dep't of Corr., 196 F. App'x 350, 355 (6th Cir. 2006) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989)). Likewise, the South Central Correctional Facility is a building, "not a 'person' or legal entity subject to suit under 42 U.S.C. § 1983." McIntosh v. Camp Brighton, No. 14-CV-11327, 2014 WL 1584173, at *2 (E.D. Mich. Apr. 21, 2014) (collecting cases establishing that prison facilities are inappropriate defendants under § 1983). Accordingly, Defendants TDOC and SCCF will be dismissed.

### 2. Official-Capacity Claims against TDOC Employees

Plaintiff's official-capacity claims against TDOC Commissioner Tony Parker and TDOC Deputy Commissioner Robert Turman for money damages will also be dismissed under the doctrine of sovereign immunity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Puckett v. Lexington-

Fayette Urban Cty. Gov't, 833 F.3d 590, 598 (6th Cir. 2016) (quoting Will, 491 U.S. at 71). Parker and Turman's office is the Tennessee Department of Correction—which is an "agenc[y] of the state of Tennessee, and [is] entitled to Eleventh Amendment immunity from suit for damages." Wingo v. Tenn. Dep't of Corr., 499 F. App'x 453, 454 (6th Cir. 2012) (internal citations omitted).

Further, while "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights," S & M Brands, Inc. v. Cooper, 527 F.3d 500, 507 (6th Cir. 2008) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983)), Plaintiff does not state a claim for prospective relief against Parker and Turman. In his complaint, Plaintiff does not request injunctive or declaratory relief.[2] Moreover, Plaintiff does not allege that any of the alleged constitutional deprivations were the result of TDOC's policy or custom. See Johnson v. Karnes, 398 F.3d 868, 877 (6th Cir. 2005) (explaining that a government entity is only liable for violations caused by its own policy or custom, not the policy of a private entity to whom it is contracted). Accordingly, Defendants Parker and Turman will be dismissed.

### 3. Claims against CoreCivic

The Court takes judicial notice of the fact that Defendant CoreCivic is a private entity contracted to manage SCCF.[3] CoreCivic is therefore acting "under color of state law" for purposes of § 1983. Street v. Corr. Corp. of Am., 102 F.3d 810, 814 (6th Cir. 1996) (citing Hicks v. Frey, 992 F.2d 1450, 1458 (6th Cir. 1993)) ("The defendants were 'acting under color of state law' in that they were performing the 'traditional state function' of operating a prison."). As such,

---

[2] Although Plaintiff requests injunctive relief in his Motion for a Temporary Restraining Order (Doc. No. 3), that motion will be denied as moot for the reasons stated above. See infra Section II.

[3] The Court "may take judicial notice of 'a fact that is not subject to reasonable dispute' either because such a fact 'is generally known' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" Davis v. City of Clarksville, 492 F. App'x 572, 578 (6th Cir. 2012) (quoting Fed. R. Evid. 201(b)). The website for the Tennessee Department of Correction reflects that CoreCivic is a private entity that manages SCCF. *South Central Correctional Facility*, TENNESSEE DEPARTMENT OF CORRECTION, https://www.tn.gov/correction/sp/state-prison-list/south-central-correctional-facility (last visited May 15, 2018).

CoreCivic can be "liable under § 1983 . . . if its official policies or customs resulted in injury to" Plaintiff. O'Brien v. Mich. Dep't of Corr., 592 F. App'x 338, 341 (6th Cir. 2014) (citing Johnson v. Karnes, 398 F.3d 868, 877 (6th Cir. 2005)).

Here, Plaintiff identifies two CoreCivic policies—one regarding requests for a cell change, and one regarding charging for copies. Plaintiff will be permitted to proceed on his claim regarding the first policy, but not the second policy.

First, the Eighth Amendment protects prisoners from "cruel and unusual punishment," Farmer v. Brennan, 511 U.S. 825, 832 (1994), including the right be free "from violence at the hands of other prisoners." Bishop v. Hackel, 636 F.3d 757, 766 (6th Cir. 2011) (quoting Farmer, 511 U.S. at 833). A prisoner's claim for failing to protect him from violence by other inmates has an objective and subjective component. Id. at 766–67 (quoting Farmer, 511 U.S. at 833). For the objective component, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 766 (quoting Farmer, 511 U.S. at 833). The subjective component requires the plaintiff to show that a prison official "acted with 'deliberate indifference' to inmate health or safety," id. (quoting Farmer, 511 U.S. at 834), which means that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Id. at 766–67 (quoting Farmer, 511 U.S. at 837).

Plaintiff alleges that he requested reassignment to a different pod in November 2017, because he feared being attacked by a gang. An SCCF Case Manager informed Plaintiff that he would likely be denied, in part, because of SCCF's policy to deny an inmate's request for a cell change if he received a write-up in the six months preceding the request. Plaintiff remained in the same pod and allegedly suffered a gang attack in December 2017. Plaintiff also suffered an alleged gang attack in this pod in March 2018. Thus, viewing the allegations in a light favorable to

Plaintiff, CoreCivic's policy may have resulted in a violation of Plaintiff's right to be free from gang attacks while incarcerated. Accordingly, the Court will allow Plaintiff to proceed with an Eighth Amendment claim against CoreCivic for failure to protect.

As to the second policy, Plaintiff alleges that SCCF charges for copies of legal documents. "The law is well settled that inmates do not enjoy a federally protected right in free photocopying services." Tinch v. Huggins, 210 F.3d 372, 2000 WL 178418, at *1 (6th Cir. Feb. 8, 2000) (citations omitted). Thus, prisoners can only bring a § 1983 claim for denying copies where the denial interferes with their "constitutional right of access to the courts." See Flagg v. City of Detroit, 715 F.3d 165, 173 (6th Cir. 2013) (citing Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)). Moreover, to state an access-to-courts claim, "a plaintiff must plead a case within a case, alleging the law and facts sufficient to establish both the interference with his access to the courts, and the non-frivolous nature of the claim that was lost." Brown v. Matauszak, 415 F. App'x 608, 612 (6th Cir. 2011) (quoting Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996)). Here, Plaintiff alleges only that the SCCF policy denied him free copies, not that he was prevented from obtaining copies altogether. Further, Plaintiff does not allege that this policy prevented him from presenting a non-frivolous legal claim to the Court. Indeed, it is clear that SCCF's policy did not prevent Plaintiff from filing the complaint that is now before the Court. Accordingly, Plaintiff does not state a viable claim regarding SCCF's alleged policy to charge for copies of legal documents.

### 4. Official Capacity Claims against CoreCivic Employees

Because CoreCivic remains as a defendant, Plaintiff's claims against the CoreCivic employees in their official capacities are redundant. As the Sixth Circuit has explained, "individuals sued in their official capacities stand in the shoes of the entity they represent." Alkire v. Irving, 330 F.3d 802, 810 (6th Cir. 2003) (citing Kentucky v. Graham, 473 U.S. 159, 165

(1985)). Accordingly, Plaintiff's official capacity claims against Cherry Lindamood, Michael Neilson, Gregory Keeton, Wanda Spears, Hank Inman, Tyler Barnett, Case Manager Bennett, Lieutenant Winston, and CO Durham will be dismissed. See Von Herbert v. City of St. Clair Shores, 61 F. App'x 133, 140 n.4 (6th Cir. 2003) (noting that the plaintiff's "official-capacity federal claims against [the individual defendants] were redundant, because they were subsumed by her § 1983 charge against" their employer).

### 5. Individual Capacity Claims against Lindamood and Keeton

Plaintiff also sues SCCF Warden Cherry Lindamood and Captain Gregory Keeton in their individual capacities, but has not alleged the personal involvement necessary to state a claim against them. Even under the liberal construction afforded to *pro se* plaintiffs, the Court "is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions," and a plaintiff "must allege that the defendants were personally involved in the alleged deprivation of federal rights." Frazier v. Michigan, 41 F. App'x 762, 764 (6th Cir. 2002) (citations omitted) (affirming dismissal of a pro se prisoner's complaint for failure to state a claim where the plaintiff "failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights"). Further, Lindamood and Keeton cannot be liable under § 1983 purely because of their supervisory positions. Everson v. Leis, 556 F.3d 484, 496 (6th Cir. 2009) (citing Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999)). Even if Plaintiff can prove a violation of his constitutional rights, "his § 1983 claim must fail against a supervisory official unless 'the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.'" Cardinal v. Metrish, 564 F.3d 794, 802–03 (6th Cir. 2009) (quoting Combs v. Wilkinson, 315 F.3d 548, 558 (6th Cir. 2002)).

Here, Plaintiff's only specific allegation against Lindamood is that, sometime around January 2018, STG Coordinator Hank Inman told Plaintiff that he would ask Lindamood to transfer Plaintiff from A-B pod cell 226. Plaintiff does not allege that he had any gang problems in A-B pod at that time, or that Inman actually spoke to Lindamood about his reassignment. As to Keeton, Plaintiff's only specific allegation is that, after Neilson and Winston told Plaintiff that he was being reassigned to C-A pod on March 9, 2018, Plaintiff explained his history of being assaulted in C-A pod to Keeton. Plaintiff does not allege that Keeton was involved in deciding where Plaintiff was housed at SCCF. Because Plaintiff has not alleged that Lindamood or Keeton were personally involved in any of the alleged constitutional violations, these two defendants will be dismissed.

### 6. Individual Capacity Claims against Remaining Defendants

Plaintiff also asserts individual capacity claims against Case Manager Bennett, Michael R. Neilson, Lieutenant Winston, Tyler Barnett, and CO Durham. For the following reasons, the Court will allow Plaintiff to proceed with Eighth Amendment failure-to-protect claims against Bennett, Neilson, and Winston at this juncture, but Defendants Barnett and Durham will be dismissed.

As stated above, a prisoner bringing a failure-to-protect claim under the Eighth Amendment must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm," Bishop, 636 F.3d at 766 (quoting Farmer, 511 U.S. at 833), and that a prison official knowingly disregarding that risk. Id. at 766–67 (quoting Farmer, 511 U.S. at 837). Thus, "a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it." Id. at 767 (citing Farmer, 511 U.S. at 841–42).

Here, Plaintiff alleges that, in November 2017, he explained to Bennett that the Crips gang in C-A pod was extorting money from him, he expected to be assaulted when he could not pay,

and that he did not have money to pay. For the purpose of initial review, these allegations are sufficient to draw the inference that Plaintiff's housing placement posed an objectively sufficiently serious risk of harm, and that Bennett was deliberately indifferent to that risk by sending Plaintiff back to C-A pod cell 202 after being informed of the threats. The Crips gang then allegedly assaulted Plaintiff in December 2017. Likewise, Plaintiff's allegations reflect that Neilson and Winston were deliberately indifferent because they forced him to return to C-A pod on March 9, 2018, despite Plaintiff's explaining his history of being assaulted in that pod. Thus, Neilson and Winston knowingly disregarded the risk that Plaintiff would be attacked. Members of the Crips gang assaulted Plaintiff later that day.

Plaintiff, however, fails to state a claim against Defendant Tyler Barnett. On March 16, 2018, Defendant Barnett allegedly admonished another inmate who warned Plaintiff to check a tray of food for hair. Plaintiff then ate the food and became violently ill. Plaintiff believes that someone put something, including glass, in the food. Plaintiff does not allege, however, that Barnett knew the food would cause Plaintiff harm—only that Barnett knew the food may have hair in it. Knowingly exposing Plaintiff to the risk that his food may be contaminated with hair on one occasion does not rise to the level of a constitutional violation. See Smith v. Younger, 187 F.3d 638, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) (quoting Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985)) ("The fact that the [prison] food occasionally contains foreign objects . . . , while unpleasant, does not amount to a constitutional deprivation.").

Further, the crux of Plaintiff's claim regarding the March 16, 2018 incident is that Barnett and other prison officials did not investigate or collect evidence to find out who allegedly compromised his food. Plaintiff does not have a constitutional right to prison staff charging and punishing an inmate who allegedly harmed him. See Napier v. Baron, 198 F.3d 246, 1999 WL

1045169, at *2 (6th Cir. Nov. 9, 1999) ("[C]ontrary to [plaintiff's] belief, he does not have a constitutional right to have a particular person criminally charged and prosecuted."). Plaintiff also alleges that prison staff failed to adequately respond to his emergency grievance on the matter. "But allegations of a failure to act or, more specifically, a failure to adequately investigate an administrative grievance or complaint do not give rise to constitutional violations." Partin v. Parris, No. 17-6172, 2018 WL 1631663, at *2 (6th Cir. Mar. 20, 2018) (citing Grinter v. Knight, 532 F.3d 567, 575–76 (6th Cir. 2008)).

Finally, Plaintiff also fails to state a claim against SCCF maintenance supervisor Durham. Plaintiff alleges that Durham allowed inmates to tamper with cell doors in E-B pod and H-C pod, and "open[ed] several chase pipes" leading to the back of E-B pod cell 103 when Plaintiff resided there. Plaintiff does not, however, allege that Durham's actions enabled or were a contributing factor in any of the incidents in which he was injured. Accordingly, Durham will be dismissed.

### 7.      State Law Claims

Plaintiff also asserts a variety of state law claims against the defendants, including negligence,[4] extortion, fraud, theft, trespass, and intentional infliction of emotional distress. (Doc. No. 1 at 16–17.) Section 1983 "does not provide redress for a violation of state law." Nickens v. Anderson, 56 F. App'x 244, 245 (6th Cir. 2003) (citing Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir. 1995)). Plaintiff's claims for extortion, fraud, theft, and trespass are based on his allegation that the SCCF library charges inmates for copies. Because Plaintiff has not stated a federal claim based on this policy, the Court declines to exercise supplemental jurisdiction over the four related state-law claims. See Basista Holdings, LLC v. Ellsworth Twp., 710 F. App'x 688, 697 (6th Cir.

---

[4] Plaintiff asserts that the defendants disregarded TDOC policy, which falls under the same umbrella as his negligence claim in these circumstances. Wiley v. Ky. Dep't of Corr., No. 11–97–HRW, 2012 WL 5878678, at *12 (E.D. Ky. Nov. 21, 2012) (citing Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir. 1992)).

2017) (quoting <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966)) (explaining that courts may exercise supplemental jurisdiction over state-law claims accompanying a § 1983 claim if they "derive from a common nucleus of operative fact"). Accordingly, Plaintiff's state-law claims for extortion, fraud, theft, and trespass will be dismissed without prejudice.

To the extent that Plaintiff's claims for negligence and intentional infliction of emotional distress are related to his remaining Eighth Amendment failure-to-protect claims against CoreCivic, Bennett, Neilson, and Winston, they will be referred to the Magistrate Judge.

## IV.    Conclusion

For these reasons, Plaintiff's application to proceed *in forma pauperis* (Doc. No. 2) will be granted. Plaintiff's motion for a temporary restraining order (Doc. No. 3) will be denied. Plaintiff's Eighth Amendment failure-to-protect claims against CoreCivic, Case Manager Bennett, Michael R. Neilson, and Lieutenant Winston, and any related state-law claims for negligence and intentional infliction of emotional distress, will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order. All other claims will be dismissed with prejudice, except that Plaintiff's state-law claims for extortion, fraud, theft, and trespass will be dismissed without prejudice.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE